
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREL ANGELO BROWN,<br><br>                   Petitioner,<br>vs.<br><br>LARRY SMALL, et al.,<br><br>                  Respondents. | CASE NO. 10-cv-0381 BEN (POR)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 |

## INTRODUCTION

Petitioner, Darrell Angelo Brown, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Magistrate Judge Louisa S. Porter issued a thorough Report and Recommendation, recommending that the Petition be denied. Dkt No. 14. Brown filed objections. Dkt No. 17. A district judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter. FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. §636(b)(1). "[T]he district judge must determine de novo any part of the [report and recommendation] that has been properly objected to." FED. R. CIV. P. 72(b)(3). Having reviewed the objections de novo and for the reasons that follow, the Report is **ADOPTED** and the petition is **DENIED**.

## BACKGROUND

Brown was convicted in state court of first degree murder and being an accessory after the fact. The jury also found Brown committed the murder in furtherance of a criminal street gang, was a principal in the murder, and in the commission of the offense at least one principal personally used a

firearm and proximately caused great bodily injury and death to a person. Brown was sentenced to seven years plus fifty years to life in prison. The judgment was affirmed by the California Court of Appeal, Fourth District and the California Supreme Court denied review on August 24, 2009.

A summary of the pertinent facts as found by the state appellate court is as follows:[1] At approximately 4:10 a.m. on December 11, 2005, Marshanae Johnson, Damien Carmichael, David Larkins, Enchante Turner, and Tyneisha Richards were sitting in a parked car outside the Bay Vista Apartments in southeast San Diego when a man approached the car and began shooting. Johnson was shot and killed. Brown and Rico Flowers were charged with and convicted of the murder, the jury finding true the enhancement allegations that Brown committed the murder to benefit a gang and that a principal personally discharged a firearm causing death.

The prosecution argued that Brown drove Flowers to the Bay Vista Apartments and waited in the car while Flowers committed the shooting. Prior to trial, three people that were in the car at the time of the shooting identified Flowers as the shooter. Brown's girlfriend testified that on December 11, 2005, she and Brown drove Flowers to the Greyhound bus station. A surveillance video captured Brown with Flowers at the Greyhound bus station. Greyhound bus records also reflected that at 6:30 p.m. on December 11th, a Greyhound bus ticket to Virginia was purchased and Brown was the person authorized to pick up the ticket. Flowers' sister, who lived in Virginia, testified that Flowers arrived unexpectedly in Virginia on the Greyhound bus, and that she accompanied him when he surrendered to the police in Virginia on December 16, 2005.

When interviewed by the San Diego police, Flowers denied being a Skyline gang member, denied going to the Bay Vista Apartments, and denied involvement in the shooting. He presented a mistaken-identity defense, arguing that another individual was the shooter. However, Moore, a key prosecution witness, provided evidence supporting the prosecution's theory that Brown drove Flowers to the scene of the shooting, and testified that he was a passenger in the car driven by Brown.

As part of his testimony, Moore stated the following: Moore grew up in the southeast neighborhood where the Skyline gang claimed its territory, and was 17 years old at the time of the

---

[1] Absent clear and convincing contrary evidence, the factual determinations of a state court are presumed correct on habeas review. See 28 U.S.C. § 2254(e)(1). Therefore, Brown's objections regarding the factual determinations are overruled.

offense. Moore lived across the street from Brown, and considered Brown to be a close family friend whom he saw nearly every day. Flowers also lived down the street, and Moore saw him occasionally. Moore claimed he was not a member of a gang, but acknowledged that he knew Brown was a Skyline gang member, who "h[u]ng out" with Skyline gang members and participated in fights with Skyline gang members who were his friends.

During the hours before the shooting, Brown, Flowers and Moore attended a "Drip-N-Wet" concert in El Cajon from around 9:00 or 10:00 p.m. until midnight or 1:00 a.m. After the concert, Brown drove Flowers and Moore in Brown's girlfriend's car to various locations, ending up at a Jack in the Box restaurant in San Ysidro at approximately 3:00 a.m. on December 11th. They hoped to meet some girls that were coming across the border from clubs in Mexico. After about 15 minutes, Moore went back to the car because he was tired and fell "[s]omewhat" asleep, while Brown and Flowers remained at Jack in the Box.

When Brown and Flowers returned to the car, Moore told Brown he was ready to go home. Moore laid in the back seat of the car with his eyes closed and fell "[s]omewhat" asleep again, thinking they were going home. However, when he woke up, the car was stopped on a street behind the Bay Vista Apartments. Brown was in the front seat of the car and Flowers was not in the car. Moore did not hear any gunshots and did not know what Flowers did while he was gone. When Flowers returned, Brown drove them home.

At 4:35 a.m. on December 11, Flowers called Moore and told him he shot a girl in a car whom he thought was Moore's sister, and suggested that Moore check. Moore's sister was dating a man from the Lincoln Park gang and frequented the Bay Vista Apartments. Moore checked on his sister and found her sleeping in their mother's bedroom. The next day, Moore heard on the news that a female was shot and killed at the Bay Vista Apartments. He thought about what happened the night before and Flowers' phone call, but did not notify the police. Moore later read the newspaper that Flowers turned himself in, but still did not call the police because Moore did not want to be involved in a trial.

On January 4, 2006, the police contacted and interviewed Moore at his home. During this initial interview, Moore did not tell the police what happened because he was afraid of the police questioning him and did not want to be a "snitch." The police detective told Moore that he knew

Brown was the driver, that Flowers was the shooter, and that Moore was with them in the car. The detective also told Moore that Flowers was in custody and might give a statement identifying Moore as the shooter; that Moore needed to be smart and tell him what happened; that it would be better for Moore to be a witness than a suspect; and that if Flowers and Brown made "deals," Moore could be "stuck with the charge." The detective suggested that maybe Moore was in the car but didn't know anything. Moore's family asked the police to give Moore twenty-four hours to think about it.

The next day, Moore told the police what he did on the night of the shooting, but did not mention the phone call from Flowers. Three months later, on March 9, 2006, Moore was interviewed at the district attorney's office with his mother in attendance. He first denied receiving a phone call from Flowers, but once the authorities told Moore that Flowers admitted the phone call and showed Moore phone records of the call, Moore admitted the call and told them what Flowers said.

Moore stated he did not know there was a gun in the car or that there was going to be a murder that night. In March 2006, he was granted immunity for his testimony, and he testified on behalf of the prosecution at a preliminary hearing and grand jury proceeding. He then became scared and did not want to testify at trial because he was called a "snitch" and was told to "watch [his] back." After trying to evade service of a subpoena, Moore was ultimately arrested and placed in jail pending his trial testimony. After his trial testimony, he was to be provided relocation services. Moore told Brown's defense counsel before trial that his release from custody "was going to be based upon the way [he would] testify," but then denied this statement at trial.

## DISCUSSION

Brown asserts two claims in his Petition: (1) he was denied a fair trial and denied his right to due process as a result of the trial court's failure to instruct the jury sua sponte on the law of accomplice testimony, and (2) the trial court abused its discretion in denying his new trial motion based upon newly discovered evidence.

As correctly outlined in the Report and Recommendation, federal habeas relief may only be granted when state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has clarified that even an erroneous or incorrect application of clearly established federal law does not support a habeas grant, unless the state court's application was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court opinion does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76).

## I. JURY INSTRUCTIONS

Brown first challenges the omission of an accomplice testimony jury instruction. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). A federal habeas court may only overturn a conviction where a given instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). "In making this determination, the jury instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 72 (quoting *Cupp*, 414 U.S. at 147).

In the few cases about jury instructions, the Supreme Court has not recognized a federal constitutional right to an accomplice testimony jury instruction. In *Estelle*, the Supreme Court granted habeas relief where a prior injury evidence jury instruction so infected the entire trial that the resulting conviction violated due process. 502 U.S. at 72. *Cupp* involved the question of whether a 'presumption of truthfulness' of witness testimony instruction deprived a defendant of the right to a fair trial. 414 U.S. at 149. In *Middleton*, the Supreme Court denied habeas relief on the basis of an erroneous "imminent peril instruction" regarding a self-defense claim. 541 U.S. at 438. The Supreme Court in *Waddington* found no violation of due process with regard to an ambiguous accomplice liability jury instruction. 555 U.S. 179, 191 (2009). Certainly, no constitutional right to have a court instruct in a particular way was recognized. Finally, *Boyd* involved a death penalty jury instruction

involving mitigating circumstances. 494 U.S. 370, 380-81 (1990). As is evident from a survey of these decisions, the United States Supreme Court has not recognized a federal constitutional right to an accomplice testimony jury instruction. Therefore, as to the omission of an accomplice testimony jury instruction, the state court's decision was not contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

## II. MOTION FOR NEW TRIAL

Brown also claims his conviction must be reversed because the trial court abused its discretion in denying his new trial motion based upon newly discovered evidence. Specifically, Brown contends the new evidence consists of testimony from Tyiesha Richards. Richards was the victim's best friend and the only non-gang member to identify Rico Flowers as the shooter. According to Brown, Richards will testify that Moore may have been present during the shooting. Respondents challenge the second claim arguing that the claim fails to present a federal question.

A state prisoner must allege a violation of federal law or the Constitution in order to present a cognizable federal habeas corpus claim. *See* 28 U.S.C. §2254(a); *Estelle*, 502 U.S. at 67-68. Habeas relief is not available for errors of state law. *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). Since Brown's claim raises only an alleged error of state law, it cannot support the granting of federal habeas corpus relief. The objections are overruled, the Report and Recommendation is adopted, and the Petition is denied.

## III. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 foll. 28 U.S.C. § 2254. A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a petitioner's claims have been denied on their merits, as here, a petitioner can meet the threshold "substantial showing of the denial of a constitutional right," by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) that a court could resolve the issues in a different

manner; or (3) that the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) and *Barefoot v. Estelle*, 463 U.S. 880 (1983)). The Court **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason, the Court could not resolve the issues in a different manner, and there are no questions adequate to deserve encouragement.

## CONCLUSION

After de novo review, the Court **ADOPTS** Judge Porter's Report. Brown is not entitled to habeas relief and his Petition is **DENIED.** The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: December 5, 2011

Hon. Roger T. Benitez
United States District Court Judge